SERPENTINE v. THE STATE.    1 Howard, 256.

### MURDER.

It is a well recognized principle of law, that the confessions of the accused cannot be given in evidence against him, when they appear to have been forced from the mind by fear, or obtained by the influence of hope;[1] and testimony is admissible to show under what circumstances confessions or gestures of the accused were made.[2] Nor are such confessions, made before a magistrate, admissible, if made through fear of bodily harm, or induced by the persuasion of hope.[3]

Where the prisoner offered to introduce witnesses to prove that, on the night previous to the examination before the magistrate, he had been taken from his bed after night, bound to a tree, and lashed in the severest manner, and also to prove that the actors in the scene were present at the time the prisoner made his confession before the magistrate, such proof was competent, and to reject it was error.[4]

An allegation in an indictment that the prisoner committed the act in A.D. 1030, presupposes the life of the accused to have continued over eight hundred years, and contradicts a known law of nature and vitiates the indictment.

Error to Warren circuit court, MONTGOMERY, J.

The facts of the case are sufficiently stated in the opinion of the court.

*Coalter & Warren* for plaintiff in error.

*T. F. Collins*, attorney general.

SMITH, J. ;

The evidence, upon which the jury who tried the issue between the State of Mississippi and the prisoner at the bar, grounded their verdict, appears embodied in the bills of exceptions which were taken at the trial. The evidence thus presented establishes the following facts, to wit : That John Coun, Alexander Montgomery, and others, on the night of the 30th of September, 1833, proceeded to the house of the late John Dubois, with whose murder the prisoner stood charged, when they found the prisoner in bed. That the prisoner was taken from his bed and severely whipped, so badly so, that John Coun

---

[1] Peter's case, 3 How., 433 ; same case, 4 S. & M., 33 ; see Keithler's case, 7 S. & M., 192 ; McCann's case, 13 ib., 471 ; Coon's case, ib., 246 ; 30 Miss., 593 ; Jordan's case, 32 Miss., 382 ; Alfred's case, 37 ib., 296 ; Simon's case, ib., 288 ; Frank's case, 39 ib., 705 ; Pitt's case, 43 ib., 472.

[2] Jordan's case, 32 Miss., 382 ; Belote's case, 36 ib., 96 ; State v. Guild, 5 Halst., 163.

[3] Peter's case, 4 S. & M., 33 ; Jordan's case, 32 Miss., 382 ; Van Buren v. State, 24 Miss., 512 ; Com. v. Harman, 4 Barr, 269.

[4] 32 Miss., 382 ; Com. v. Knapp, 10 Pick., 477 ; State v. Roberts, 1 Dev., 259 ; State v. Gould, 5 Halstead, 163 ; Van Buren v. State, 24 Miss., 512.

did not recollect to have seen any one so badly abused.   That a rope was then fastened to the prisoner, and one of the witnesses taking hold of it, followed the prisoner to the north-west corner of the field, where Dubois had been found murdered about three weeks previous thereto, and that a gun was then placed in the hands of the prisoner, "who put his finger in the muzzle, handed it back and nodded his head."   And further, that none of the persons present understood the expressions used by the prisoner, as he spoke in a foreign language.   That on the morning following, before the committing magistrate, prisoner voluntarily confessed " to the murder."   That the prisoner was informed " of his right to make a confession."   That the witness, William J. Read, " apprised defendant of the law, and that he need not make any statement that would criminate himself." That the confession was made in the French language, which was translated and taken down by the magistrate.   That the witness Read " understood the French language indifferently, but sufficiently to enable him to transact ordinary business ; " but that he " would not be positive he understood the prisoner correctly, but at the time was positive he understood him."   That at the time of the examination before the magistrate he heard no threats or menaces of any kind, and that John Coun and Alexander Montgomery were present at the said examination before the committing magistrate.

It also appears from the exceptions taken at the trial, that the counsel for the defendant offered several witnesses who were not permitted to be sworn, to prove that during the night preceding the examination before the magistrate, the witnesses who were then offered went to the house of the late John Dubois, where finding the prisoner, they took him from his bed, bound him to a tree, and, while naked, he was whipped by four persons successively ; that, having suffered the severest inflictions of the lash, "he was told to confess about the murder of Dubois." That afterwards, he, the said prisoner, was again informed through an interpreter, " that their object in whipping him was to make him confess what he knew about the murder of Dubois," and that they, the persons, who had thus, by this extraordinary method, attempted to coerce a confession from the prisoner,

were present at the examination before the magistrate who took prisoner's confession.

Upon the state of facts here presented, two questions present themselves for the consideration of the court, to wit:

1. Were the acts of the prisoner on the night of the 30th of September, 1833, under the circumstances above detailed, and the confession made on the following morning before the magistrate, admissible as evidence to charge him with the murder of Dubois?

2. And was the testimony offered on the part of the defendant properly excluded?

It does not appear from any part of the evidence adduced in support of the prosecution, that the prisoner was informed or knew that the treatment which he had received was connected with his alleged guilt as the murderer of Dubois.

It is, however, fairly to be inferred, that, informed by his guilty fears, or the language of those who had thus unceremoniously put him to the torture, he but too well knew the motives which influenced them. His act, then, in proceeding to the scene of the murder, of putting his finger in the muzzle of the gun, which was there presented to him, and nodding his head, may, by a very strained construction, be interpreted to mean an acknowledgment of his guilt. But regarded as an explicit avowal of the deed, it is clearly inadmissible as evidence of the crime with which he stood charged. It is a well-recognized principle of law that the confessions of the accused cannot be given in evidence against him, when they appear to have been forced from the mind by fear or obtained by the influence of hope. See Lord Hale, P. C., 234; McNally's Ev., 42, Rules 4 and 9; Hawk., P. C., 234, § 36. It is impossible to conceive a case where the rule applies with much greater force. Every circumstance was calculated to excite the most agonizing impressions of fear. Taken from his bed after night, bound to a tree, and lashed in the severest manner, he may well have supposed that the only alternative by which he could relieve himself from his calamities was an acknowledgment of the crime of which he was accused. But I do not think the acts of the prisoner, on that occasion, can be considered a con-

fession of his guilt; at most, they are very equivocal, and may have been intended by the prisoner, who, it appears, did not speak the English language, to convey not an admission of his guilt, but a knowledge of the fact of Dubois' murder, and the weapon used in the perpetration of the crime. The first confession of the prisoner was on the morning following, as appears from the evidence in support of the prosecution. The confession made at that time was voluntary, uninfluenced by the persuasion of hope, or the suggestions of fear, and after he had been, in the language of the witness, "informed of his rights, and that he need not make any statement that would criminate himself." There is, however, a vagueness in the confession of the prisoner, and the admission on the part of Read, who acted as interpreter before the committing magistrate, that, from his imperfect knowledge of the French language, in which the prisoner spoke, he may not have correctly understood the prisoner's meaning; which strongly incline me to the opinion that his testimony should have been refused. I do not, however, deem it necessary to decide the question of its admissibility.

2. The witnesses tendered by the prisoner to prove the transactions of the night, previous to the examination before the magistrate, and also to prove that the actors in the scene were present at the time the prisoner made the confession before the magistrate, were, I am inclined to believe, improperly excluded. If it is assumed that the acts of the prisoner, on the night of the 30th of September, were, in effect, an acknowledgment of the crime charged, the testimony here offered was clearly competent to prove the circumstances under which that confession was obtained, and that the subsequent confession was made under the same inducement. But taking it as granted that no confession was made on that night, yet it was competent to establish facts which, in their direct effect, would raise legal presumptions that the mind of the prisoner in making his confession was operated upon by a strong sense of impending danger, which he hoped thereby to avoid. The witnesses offered by the accused, and who were excluded by the court, were introduced to prove that several persons, who were present at the time when the prisoner's confession was made, had, on the

preceding night, greatly abused the prisoner, and severely scourged him, informing him, at the same time, that their object was to make him confess what he knew about the murder of Dubois; and that the prisoner, under the infliction of the lash, attempted to express himself, but was unintelligible. Had these facts been established in the court below, would not the presumption most clearly have arisen, that the prisoner, at the time of making his confession, surrounded as he was by those who, but a few hours before, had manifested a purpose of coercing a confession; without assurance of safety, or warning of the consequences of a confession, ignorant of the language of those who surrounded him, and unintelligible to all save the witness Read, labored under an impression that he had been brought before the magistrate for the purpose of acknowledging the murder of Dubois? If so, the confession of the prisoner ought not to have been given in evidence against him, under a rule of law universally recognized to be founded, not only in the dictates of humanity, but upon the soundest principles of reason.

3. A third objection not embraced by the special assignment of errors, but which is properly presented under the general assignment, merits the consideration of the court. The objection is, that the indictment does not show any crime to have been committed against the State of Mississippi, and that the assumption of the truth of the allegations contained therein, is inconsistent with a known law of nature. The crime charged against the prisoner, is alleged to have been committed on the 30th day of September, A. D. one thousand and thirty-three; whether it is a mistake which occurred in the indictment, which substantially contradicts a known law of nature, regulating the duration of human life, it is clearly defective, and cannot be the legitimate foundation of a judgment of a court. All knowledge of the laws of nature which govern the material world, is primarily derived from experience, and our belief in their permanency rests upon the same foundation. An allegation which presupposes the life of the accused to have endured for upwards of eight hundred years, as it contradicts the experience of the whole world, must be considered as impossible. Again, an

offense committed at that date, though not barred by any statute of limitations, is not an offense against the State of Mississippi. Courts of justice will judicially notice the great epochs in the history of the country, as well as the laws of the land; this court is, therefore, bound to know that the State of Mississippi did not exist at the time at which the murder is alleged to have been committed, and that, therefore, it could have been no infraction of her laws.

The judgment will, therefore, be reversed, and the prisoner discharged.